# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kay Lee Carroll, | No. CV-16-03443-PHX-JZB |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Kay Lee Carroll seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her disability insurance benefits and supplemental security income under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence and is based on legal error, the Commissioner's decision will be vacated and the matter remanded for further administrative proceedings.

## I.     Background.

On February 6, 2013, Plaintiff applied for disability insurance benefits and supplemental security income, alleging disability beginning March 24, 2012. On December 30, 2014, she appeared with her attorney and testified at a hearing before the ALJ. A vocational expert also testified. On April 21, 2015, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals

1 Council denied Plaintiff's request for review of the hearing decision, making the ALJ's

2 decision the Commissioner's final decision.

3 **II.     Legal Standard.**

4          The district court reviews only those issues raised by the party challenging the

5 ALJ's decision.  *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court

6 may set aside the Commissioner's disability determination only if the determination is

7 not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d

8 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a

9 preponderance, and relevant evidence that a reasonable person might accept as adequate

10 to support a conclusion considering the record as a whole. *Id.* In determining whether

11 substantial evidence supports a decision, the court must consider the record as a whole

12 and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.*

13 As a general rule, "[w]here the evidence is susceptible to more than one rational

14 interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be

15 upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

16          Harmless error principles apply in the Social Security Act context. *Molina v.*

17 *Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if there remains

18 substantial evidence supporting the ALJ's decision and the error does noct affect the

19 ultimate nondisability determination. *Id.* The claimant usually bears the burden of

20 showing that an error is harmful. *Id.* at 1111.

21          The ALJ is responsible for resolving conflicts in medical testimony, determining

22 credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.

23 1995). In reviewing the ALJ's reasoning, the court is "not deprived of [its] faculties for

24 drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes v.*

25 *Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

26 **III.    The ALJ's Five-Step Evaluation Process.**

27          To determine whether a claimant is disabled for purposes of the Social Security

28 Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the

burden of proof on the first four steps, but at step five, the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through March 31, 2015, and that she has not engaged in substantial gainful activity since March 24, 2012. At step two, the ALJ found that Plaintiff has the following severe impairments: "degenerative disc disease/degenerative joint disease of the lumbar spine, obesity, residual of left wrist fracture, affective disorder, and anxiety disorder." (AR 15.) At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. At step four, the ALJ found that Plaintiff has the RFC to perform:

> light work (lifting and carrying 20 pounds occasionally and ten pounds frequently; sitting for at least six hours out of eight; and standing/walking for at least six hours out of eight) as defined in 20 CFR 404.1567(b) except the claimant can never crawl, climb ropes, ladders, or scaffolds. She can

occasionally stoop, kneel and crouch. With her left arm, the claimant can occasionally push and pull and frequently reach overhead. The claimant can occasionally engage in handling, fingering gross and fine manipulation with the left. The claimant can frequently feel on the left. She is right hand dominant. However, the claimant should avoid concentrated exposure to unprotected heights. She is able to understand, remember, and carry out simple to moderately complex instructions and tasks.

(AR 17.) The ALJ further found that Plaintiff is unable to perform any of her past relevant work. At step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform.

## IV.   Analysis.

Plaintiff argues the ALJ's decision is defective for four reasons: (1) the ALJ erred in giving little weight to Plaintiff's treating physicians, (2) the ALJ did not properly consider the opinions of the examining doctors, (3) the ALJ erred in finding Plaintiff's hip pain and bilateral knee pain were non-severe, and (4) the ALJ erroneously discounted the testimony of Plaintiff's husband, Carson E. Carroll, Jr. (Doc. 23 at 11-16.) The Court will address each argument below.

### A.   Weighing of Medical Source Evidence.

Plaintiff argues that the ALJ improperly weighed the medical opinions of the following medical sources: Laurel A. Retay, D.O, and Elizabeth Gioia, PhD. The Court will address the ALJ's treatment of each opinion below.

#### 1.   Legal Standard.

The Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an ALJ should give greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than to one of a non-examining physician. *See Andrews v. Shalala*, 53 F.3d 1035, 1040-41 (9th Cir. 1995); *see also* 20 C.F.R. § 404.1527(c)(2)-(6) (listing factors to be considered when evaluating opinion evidence, including length of examining or treating relationship, frequency of examination, consistency with the record, and support from objective

evidence). If it is not contradicted by another doctor's opinion, the opinion of a treating or examining physician can be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830 (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). A contradicted opinion of a treating or examining physician "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews*, 53 F.3d at 1043).

An ALJ can meet the "specific and legitimate reasons" standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). But "[t]he ALJ must do more than offer [her] conclusions. [She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Embrey*, 849 F.2d at 421-22. The Commissioner is responsible for determining whether a claimant meets the statutory definition of disability and does not give significance to a statement by a medical source that the claimant is "disabled" or "unable to work." 20 C.F.R. § 416.927(d).

### 2. Laurel A. Retay, D.O.

Dr. Laurel Retay has served as Plaintiff's primary care physician for over eight years. (Doc. 23 at 7.) Dr. Retay has diagnosed Plaintiff with "anxiety, bone problems left arm, back, knees, neck, right shoulder, and hips." (AR 597.) Dr. Retay concludes that these conditions limit Plaintiff to standing and walking fewer than two hours in an eight-hour workday; sitting fewer than 2 hours in an eight-hour workday; and lifting and carrying fewer than ten pounds. (AR 597.) Further, Dr. Retay states that Plaintiff's disabilities require that she have the freedom to shift at will between sitting or standing/walking; that she needs to lie down at unpredictable times during an eight-hour workday; that she is limited in her ability to use stairs; and that her disabilities would cause her to be absent from work more than three times a month. (AR 597.)

Dr. Retay's medical opinion was contradicted by the opinions of Drs. Karine Lancaster, M.D and Janet G. Rodgers, M.D. (*Compare* AR 73-75, 89-91 *with* 597-600.)

Dr. Lancaster opined Plaintiff had greater abilities than those identified in Dr. Retay's opinion. Specifically, Dr. Lancaster found that Plaintiff has the following limitations: Plaintiff may occasionally lift/carry 20 pounds; Plaintiff may frequently lift/carry 10 pounds; Plaintiff can stand and/or walk for a total of about 6 hours in an 8-hour workday; Plaintiff can sit for a total of about 6 hours in an 8-hour workday; Plaintiff should never climb ladders/ropes/or scaffolds; Plaintiff should never crawl; Plaintiff can occasionally stoop, kneel, or crouch. (AR 73-75.)

Dr. Rodgers also opined that Plaintiff had greater abilities than those identified in Dr. Retay's opinion. Specifically, Dr. Rodgers found that Plaintiff has the following limitations: Plaintiff may occasionally lift/carry 20 pounds; Plaintiff may frequently lift/carry 10 pounds; Plaintiff can stand and/or walk for a total of about 6 hours in an 8-hour workday; Plaintiff can sit for a total of about 6 hours in an 8-hour workday; Plaintiff is unlimited climbing ramps and stairs; Plaintiff should never climb ladders/ropes/or scaffolds; Plaintiff should never crawl; Plaintiff can occasionally stoop, kneel, or crouch.

Because Drs. Lancaster's and Rodgers' medical opinions contradicted the opinion of Dr. Retay, the ALJ could discount Dr. Retay's opinion for specific and legitimate reasons supported by substantial evidence. *Lester*, 81 F.3d at 830-31.

In his decision, the ALJ states that:

> The undersigned affords [Dr. Retay's] opinion little weight because it is not consistent with the medical evidence that shows the claimant has a non-antalgic gait. It is also inconsistent with the claimant's attendance at college. The last examination (prior to December 12, 2013) performed by [Dr. Retay] was on February 13, 2013, and included only the heart and lungs (Exhibit 4F/2). There were no visits of record from February 13, 2013 to December 19, 2013, when no examination was conducted and the purpose of the visit was to refill medications (Exhibit 13F). There was only one further visit of record on August 14, 2014 and no examination results were recorded (Exhibit 14F). Additionally, it appears this statement was primarily based on the claimant's subjective complaints rather than the objective and clinical findings. For example, Dr. [Retay] uses the first person when [she] discusses the claimant's limitation with respect to stairs. Specifically [she] states, "stairs are difficult because I have fallen on stairs" (Exhibit 9F).

(AR 20.) In short, the ALJ discounted Dr. Retay's opinion for four reasons: (1) it is not consistent with the medical evidence in the record, (2) it is inconsistent with Plaintiff's

attendance at college, (3) treatment gaps exist between the time Dr. Retay treated Plaintiff and the time she provided her opinion, and (4) Dr. Retay's opinion is based on Plaintiff's subjective complaints. The Court will consider each reason below.

### a. Consistent with the Medical Record.

The ALJ's first reason for discounting the opinions of Dr. Retay is that her opinion "is not consistent with medical evidence that shows Plaintiff has a non-antalgic gait" and "[Plaintiff's] attendance at college." (AR 20.)

As an initial matter, the ALJ's first reason is vague and conclusory. The ALJ did not mention any contradictory medical professionals by name, but cited only to the "medical evidence of record" in his explanation of why he was discounting Dr. Retay's opinion. (*See* AR 20.) Such a vague and conclusory finding is not a specific and legitimate reason for rejecting the medical opinion of a treating physician. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (holding that an ALJ commits legal error when she "failed to identify the testimony she found not credible [because] she did not link that testimony to the particular parts of the record supporting her non-credibility determination." (emphasis in original)). "[W]e are constrained to *review* the reasons the ALJ asserts" and "we may not take a general finding . . . and comb the administrative record to find specific conflicts." *Id.*

In her brief, Plaintiff posits that the ALJ was relying on the opinion of Dr. Richard M. Palmer, M.D., which contained a statement noting a normal gait in his consultative examination report. (Doc. 23 at 12.) To the extent Plaintiff is correct, the ALJ still erred in discounting Dr. Retay's opinion, because the ALJ ignores several portions of the record that indicate Plaintiff did in fact have an antalgic gait. (*See, e.g.*, AR 666 (Dr. McWhorter observing that Plaintiff was limping at a December 13, 2013 appointment); AR 192 (notes from the Social Security representative who interviewed Plaintiff stating that she had difficulty with standing, walking, and getting up from her chair).) Furthermore, the ALJ fails to explain why a non-antalgic gait is relevant to the opinions offered on Plaintiff's ability to sit, stand, or lift. Reliance on such a singular statement to

discount the entirety of a treating physician's medical opinion is error.

The Commissioner argues that the ALJ reasonably discounted Dr. Retay's medical opinion because it conflicts with treatment notes in the record documenting a normal gait. (Doc. 24 at 9-10 (citing AR 591 (Dr. Palmer's consultative examination report showing "normal" gait); AR 315 (Dr. Thomas Schenk's March 26, 2012 consultation for surgery on her left wrist after she fell); AR 580 (Dr. Kari Coelho's May 22, 2013 clinical psycology evaluation, in which she makes the general observation that "there did not appear to be any significant gait disturbance")).) In support of his argument, the Commissioner cites to the Eighth Circuit case *Crawford v. Colvin*, 809 F.3d 404, 409 (8th Cir. 2015), which affirmed an ALJ's opinion that "discounted an opinion that a claimant 'could stand or walk for a total of two hours in a normal workday' because it conflicted with other evidence, including the fact that 'most of the medical records' documented 'a normal gait and [ability to] balance enough to stand and walk without assistance.'" (Doc. 24 at 10.) The Commissioner's reliance on *Crawford* is misplaced. Unlike in *Crawford*, where *most* of the medical records documented a normal gait, the medical record in this case contains only three such records. (*See* AR 315, 580, 591.) Far more frequently, the record shows that Plaintiff's gait was unsteady or disturbed. (*See* AR 428, 434, 667, 686-90.) The Court finds that the ALJ's reliance on Plaintiff's "non-antalgic" gait is a specific, but not a legitimate reason for discounting the opinion of Dr. Retay.

### b.    Plaintiff's Attendance at College.

The ALJ's second reason for discounting Dr. Retay's medical opinion is because "it is also inconsistent with the claimant's attendance at college." (AR 20.) Plaintiff argues that the ALJ's conclusion is based on his improper speculation that Plaitniff attended college full time, which is incorrect. (Doc. 29 at 3-4.) In fact, Plaintiff attended college only part time, which is consistent with Dr. Retay's medical opinion. (*Id.*) Further, Dr. Retay's treatment notes state that Plaintiff was receiving help with her activities, including "note taking, writing, etc." (AR 420.) The ALJ relies on pure speculation to determine that Plaintiff's attendance at school was full time, and that it

required "lugging heavy books" such that it was inconsistent with Dr. Retay's medical opinion. Such speculation does not constitute a specific and legitimate reason for discount a treating physician's opinion.

The Commissioner argues that this instance is analogous to *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 115, 1161 (9th Cir. 2008), wherein the Ninth Circuit affirmed an ALJ's rejection of the claimant's assertion that he had to "change positions" constantly when sitting because it was inconsistent with his full-time college attendance. (Doc. 24 at 10.) *Carmickle* is distinguishable. Unlike in *Carmickle*, where the claimant attended school full-time, here Plaintiff attended college only part time was not able to finish school. (Doc. 23 at 12.) The Court finds that the ALJ's reliance on Plaintiff's part-time college attendance is a specific, but not a legitimate reason for discounting the opinion of Dr. Retay.

### c. Infrequent Examinations.

The ALJ's third reason for discounting the medical opinions of Dr. Retay is that "[t]here were no visits of record from February 13, 2013 to December 19, 2013[,]" and "there was only one further visit of record on August 14, 2014, and no examination results were recorded." (AR 20.)

An ALJ may consider the length of the treatment relationship and the frequency of examinations when weighing a medical opinion. 20 C.F.R. § 4.4.1527(c)(2)(i); *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir.2007) ("Our case law is clear that if a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated."). Still, "disability benefits may not be denied because of the claimant's failure to obtain treatment [he or she] cannot obtain for lack of funds." *Orn*, 495 F.3d at 638. But this rule does not apply when a claimant receives medical care during the time the claimant alleges an inability to pay for care. *Id.* (distinguishing *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453 (9th Cir. 1995) by noting that "rejection of [the claimant's] back pain testimony was appropriate [in *Flaten*] because

during the time [the claimant] alleged she was unable to afford treatment she had received other medical care . . . .").

In this instance, Plaintiff has not alleged that she could not obtain funds to secure treatment. What is more, Plaintiff was able to meet with other physicians during her treatment gap with Dr. Retay between February and December 2013. However, Plaintiff did see multiple providers during that time span.

On March 1, 2013 Plaintiff saw Dr. Cuny at Arizona Regional Medical Center following her involvement in a car crash. (AR 486-507 (the record's comments indicate Plaintiff arrived by ambulance and had no insurance, MEDICARE, or AHCCCS coverage).) On May 22, 2013, Plaintiff saw Dr. Kari Coelho for a psychological consultative examination. (AR 580-87.) On June 8, 2013, Plaintiff saw Dr. Richard Palmer, a consultative examiner for the Department of Disability Services. (AR 588-96.) On November 26, 2013, Plaintiff saw Dr. Brian McWhorter, an orthopedic surgeon, for bilateral knee pain. (AR 670-74.) On December 13, 2013, Plaintiff returned to Dr. McWhorter reporting bilateral hip pain. (AR 666.)

It is unclear that Plaintiff had insurance during this treatment gap. And, while not alleged, the financial evidence in the record suggests a potential explanation that Plaintiff could not afford insurance during that time. (AR 184 (Plaintiff's financial reports showing income of less than $1300 total between 2011 and 2012, with no income in 2013).) Further, two of the four doctors seen during this time period were state consultative examiners. And the other two were temporally adjacent to her appointments with Dr. Retay. Given the totality of the evidence, the temporal gap between Plaintiff's appointments with Dr. Retay is not a legitimate reason for discounting Dr. Retay's medical opinion. (Doc. 24 at 11.)

### d.    Based on Subjective Complaints.

The ALJ's fourth reason for discounting the medical opinions of Dr. Retay is that it "appears this statement was primarily based on the [Plaintiff's] subjective complaints rather than the objective clinical findings." (AR 20.) A physician's reliance on a

claimant's "subjective complaints hardly undermines his opinion as to her functional limitations, as a patient's report of complaints, or history, is an essential diagnostic tool." *Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003) (internal citations and quotations omitted). "If a treating provider's opinions are based 'to a large extent' on an applicant's self-reports and not on clinical evidence," however, and "the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)).

An ALJ must "explain how she reached the conclusion that a physician's opinion was largely based on self-reports." *Castilleja v. Colvin*, No. 2:14-CV-3105-RMP, 2016 WL 6023846, at *5 (E.D. Wash. Jan. 27, 2016) (internal quotation marks omitted). Here, the ALJ merely asserts that Dr. Retay's opinions relied on Plaintiff's subjective complaints. He provides no basis for this conclusion, and fails to identify which of Dr. Retay's findings this conclusion relates to. The ALJ's conclusory statement is not the "detailed and thorough summary of the facts and conflicting clinical evidence" required for the ALJ to reject Dr. Retay's opinion. *See Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986) *superseded by statute on other grounds as recognized in Everson v. Colvin*, 577 Fed. App'x 743, 743 (9th Cir. 2014).

Here, the ALJ gives no indication of what evidence he is referring to when he states "it appears this statement was primarily based on the claimant's subjective complaints rather than the objective and clinical findings." (AR 20.) To the extent the ALJ is referencing the August 14, 2014 visit, his analysis is simply incorrect. The record shows that Dr. Retay ordered x-rays of Plaintiff's chest and ribs to be performed, took vitals, and ordered lab tests to help diagnose the issue. (AR 621-23.) Nothing in the evaluation itself indicates that these assessments were based entirely on Plaintiff's subjective reports. Moreover, a review of Dr. Retay's other treatment notes shows notations of her physical examinations of Plaintiff, diagnoses, and treatment. The Court concludes that the ALJ's fourth reason was not legitimate.

### e. Summary.

The Court finds that the ALJ failed to provide specific and legitimate reasons for discounting the opinion of Dr. Retay. Accordingly, the ALJ committed legal err as to her treatment of Dr. Retay's medical opinion.

### 3. Elizabeth Gioia, M.D.

Dr. Gioia has been treating Plaintiff for her anxiety and depression since December 2013. (AR 598.) Further, in 2012 and 2013, Dr. Gioia also served as Plaintiff's professor. Dr. Gioia asserts that she has "seen [Plaintiff's] health, cognitive processing and coping skills deteriorate greatly in the past two years." (AR 703.) On January 2, 2014, Dr. Gioia completed a Mental Impairment Questionnaire regarding Plaintiff. (AR 598-600.) Therein, Dr. Gioia diagnosed Plaintiff with "Severe Pain, Anxiety [and] Depression due to multiple accidents[and] trauma – PTSD, Panic Disorder, Depression, (Probable neurocognitive disorder from observation." (AR 598.) Dr. Gioia further states that Plaintiff would "[d]efinitely [n]ot" be "capable of performing a full-time job, working 8 hours a day, 5 days per week, on a regular and continuing basis[.]" (AR 600.) That same day, Dr. Gioia authored a letter explaining her decision. (AR 705.)

Dr. Gioia's medical opinion is contradicted by the opinions of Dr. Kari Coelho, Psy. D. (AR 580-87), and the state agency consultants (AR 66-80, 82-96.) Dr. Coelho met with Plaintiff in May 2013 as a consultative examiner. In her report, Dr. Coelho notes that Plaintiff was capable of interacting appropriately with the examiner. (AR 586.) Plaintiff also effectively communicated and maintained good eye contact with the examiner, and reported no interpersonal difficulties in terms of getting along with coworkers or responding appropriately to supervision. (AR 586.) Ultimately, Dr. Coelho diagnosed Plaintiff with panic attacks without agoraphobia, generalized anxiety disorder, depressive disorder, and pain disorder associated with both physiological factors and general medical condition. (AR 584.) Further, Dr. Coelho opined that Plaintiff's ability to maintain attention and concentration was limited, and that her pain could affect her ability to get to work on a daily basis. (AR 595-86.) What is more, Dr. Coelho states that

"Plaintiff is reporting high levels of being overwhelmed and anxious, to the extent it could affect her ability to respond appropriately to changes in a work setting. (AR 586.)

In June 2013, state consultant "LML, PhD 38" completed a Mental Residual Functional Capacity (MRFC) Assessment of Plaintiff's medical record. (AR 75-77.) Therein, she opined that Plaintiff was moderately limited in her ability to act appropriately with the general public, but not significantly limited in any other relevant way. (AR 76.) The consultant states that Plaintiff "can perform simple and some complex tasks[,] can relate to others on a superficial work basis[,]" and "can adapt to a work situation." (AR 77.)

In October 2013, another state consultant, "JLK, PhD 38," completed a second MRFC Assessment of Plaintiff's medical record. (AR 92-95.) Their assessment is virtually identical to that of the first state consultant. (*Compare* AR 92-95 *with* AR 75-77.)

Because the medical opinions of Dr. Coelho and the state consultants contradicted the opinion of Dr. Gioia, the ALJ could discount Dr. Gioia's opinion for specific and legitimate reasons supported by substantial evidence. *Lester*, 81 F.3d at 830-31. In his decision, the ALJ provides the following reasoning for discounting Dr. Gioia's medical opinion:

> Although Dr. Gioia is an acceptable medical source, her opinion is not based on a long treatment history. In her questionnaire she stated she started treating the claimant December 30, 2013. There are no treatment records or notes from any office visit prior to January 2, 2014. Dr. Gioia further conflicts herself and denies seeing the claimant on December 30, 2013. Instead, she listed the dates of office visits of December 13, 2013, July 6, 2014, October 24, 2014, and November 14, 2014 [AR 702]. No records or findings were kept as to any of these visits. The statement was signed January 2, 2014. As a result, this opinion appears to be based on one visit which occurred either on December 13 or 30, 2013, depending upon which of Dr. Goia's summaries is deemed to be accurate. Additionally, Dr. Goia bases her opinion in part on physical findings that she is unqualified to make. For example she state the claimant has moderate limitations in a number of areas hut she did not define that term. Additionally, she did not provide any rationale to explain her opinions and the treatment records do not support her opinions.

(AR 21-22.)

In sum, the ALJ discounts the opinion of Dr. Gioia for three reasons: (1) Dr. Gioia has a short treatment history with Plaintiff, (2) Dr. Gioia conflicts herself in her submissions regarding the dates she treated Plaintiff, and (3) Dr. Gioia based her findings in part on physical findings that she is unqualified to make. The Court will consider each opinion below.

### a.   Lack of treatment history.

The ALJ's first reason for discounting Dr. Gioia's medical opinion is that it "is not based on a long treatment history." (AR 21.) "Length of the treatment history and the frequency of examination by the treating physician, [and] the nature and extent of the treatment relationship between the patient and the treating physician" are all factors an ALJ must consider in determining how much weight to accord to a treating physician's medical opinion. *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014); 20 § C.F.R 404.1527(c).

In this instance, Plaintiff saw Dr. Gioia only once prior to Dr. Gioia issuing her opinion. But, Plaintiff had a relationship with Dr. Gioia over a period of two years. Courts have rejected "short treatment history" as a rational for discounting a medical opinion for periods as short as three months. *See Colcord v. Colvin*, 91 F. Supp. 3d 1189, 1196 (D. Or. 2015) (rejecting "short treatment history" as a rationale for discounting a treating psychiatrist's opinion when the treatment lasted "three months" and the doctor was "meeting with plaintiff on a bi-weekly basis").

The Court finds this reason by the ALJ for discounting Dr. Gioia's opinion to be disingenuous. In short, the ALJ reasons that Dr. Gioia's opinion should be discounted because she had only seen Plaintiff as a patient one time at the time of her report, and simultaneously justifies the decision by relying on the opinions of three doctors who have examined Plaintiff a combined total of one time. The record shows that Dr. Gioia observed Plaintiff over the course of two years. The ALJ's first reason for discounting Dr. Gioia's medical opinion is not legitimate.

### b.   Inconsistent Reports and Lack of Treatment Notes.

The ALJ's second reason for discounting Dr. Gioia's medical opinion is that it is unsupported by contemporaneous treatment notes and contains conflicting statements about her treatment relationship with Plaintiff. (AR 21-22.) An ALJ may reasonably discount a medical opinion that lacks explanation and supporting documentation. *See* 20 C.F.R. § 404.1527(c)(3). Further, it is a claimant's burden to provide the complete documentation needed to make a disability determination. *See* 20 C.F.R § 404.1512(a).

Plaintiff does not dispute that neither she, nor Dr. Gioia, submitted treatment notes for the reported visits in December 2013, and in July, October, and November of 2014. Instead, Plaintiff argues only that "Dr. Gioia provide[s] a substantial explanation of her opinion that goes beyond her formal treatment to include her time as a professor to Ms. Carroll both before and after the bicycle accident." (Doc. 29 at 9 (citing AR 705).) Plaintiff's argument is not persuasive.

Courts have found the lack of treatment notes instructive on the issue of whether a medical opinion is well supported. *See Burkstrand v. Astrue*, 346 Fed. App'x 177, 180 (9th Cir. 2009); *see also Watson v. Astrue*, No. 5:11-cv-00717, 2012 WL 699788, *9 (N.D. Ohio Mar. 1, 2012). Here, the fact that Plaintiff provided no treatment notes in support of Dr. Gioia's opinion provides a specific and legitimate reason for discounting Dr. Gioia's medical opinion.

### c.    Improper basis for findings.

The ALJ's third reason for discounting Dr. Gioia's medical opinion is that "Dr. G[i]oia bases her opinion in part on physical findings that she is unqualified to make." (AR 22.) An ALJ may discount a treating physician's opinion "on a matter not related to her or his area of specialization." *Holohan v. Massanari*, 246 F.3d 1195, 1203 (9th Cir. 2001) ("Under certain circumstances, a treating physician's opinion on some matter may be entitled to little if any weight. This might be the case, for instance, if the treating physician . . . offers an opinion on a matter not related to her or his area of specialization, . . . and presents no support for her or his opinion on the matter[.]"); *see also* 20 C.F.R. § 404.1527(c)(5).

In her January 2, 2014 letter, Dr. Gioia states that

> This letter is in regards to a request for records for [Plaintiff]. [Plaintiff] is 52 years of age and has multiple physical disabilities due to past traumas. She has been a client of mine since December of 2013. However, I had previously been her professor in 2012 and 2013 and I have seen her health, cognitive processing and coping skills deteriorate greatly in the past two years.
>
> Psychological assessment and interviews revealed that she experiences Panic Disorder, Post Traumatic Stress Disorder, Generalized Anxiety and Depression. During many sessions, I have seen her struggle to process, understand or speak the words she desires to speak, due to cognitive impairment, extreme pain and fatigue. The panic attacks occur several times a week, often waking her in the middle of the night. She reports poor sleep due to pain, and she struggles waking in the mornings. Ms. Carroll has experienced multiple losses and is also grieving these bereavements.
>
> [Plaintiff] has become despondent due to reported constant chronic fibromaylgic pain and acute pain due to past physical traumas. Past traumas include repeated and extreme domestic violence, a horrific bike accident (this occurred while she was a student of mine), multiple head injuries, and horseback riding accidents. The bike accident left [Plaintiff] extremely disabled. Even after surgeries, she is no longer able to use her right hand fingers. One tragic outcome is that she is no longer able to play her guitar. [Plaintiff] had been an outstanding musician, singer and songwriter. This has added to her sense of loss.
>
> It is my professional opinion, that because of the physical, cognitive and psychological limitations that Ms. Carroll is unable to work and should be granted disability.

(AR 705.)

Plaintiff concedes that "Dr. Gioia does state that some of [Plaintiff's] difficulties are the result of her physical maladies[,]" but notes that "Dr. Gioia also opines [Plaintiff] 'experiences Panic Disorder, [PTSD], Generalized Anxiety and Depression.'" (Doc. 29 at 9.) Plaintiff provides no support for her argument that a medical opinion cannot be given reduced weight because it is only partially based on findings the medical professional was unqualified to make. The Court finds that Dr. Gioia's reliance on physical findings as a basis for her medical opinion is a specific and legitimate reason for discounting her opinion.

### d.    Summary.

The ALJ discounted the opinion of Dr. Gioia because no treatment notes were provided in support of the opinion, and it is undisputed that the opinion relied in part

upon physical findings that Dr. Gioia is unqualified to make. The Court finds these reasons to be specific and legitimate reasons for discounting Dr. Gioia's opinion, and the ALJ did not err by doing so.

### 4. Richard Palmer, M.D.

On June 8, 2013, Plaintiff presented to Dr. Palmer for a physical consultative examination. Dr. Palmer diagnosed Plaintiff with "Status post open reduction, internal fixation of left distal radius and ulnar fractures[,]" and "Neuropathy, left hand[.]" (AR 593.) Dr. Palmer assessed that Plaintiff has the following limitations: (1) Plaintiff may occasionally lift 10 pounds, frequently lift less than 10 pounds; (2) Plaintiff should never crawl, work around heights, or climb ladders, ropes, or scaffolds; (3) Plaintiff can occasionally handle, or finger; and (4) Plaintiff can frequently engage in reaching or feeling. (AR 594.)

In her decision the ALJ affords Dr. Palmer's opinion "minimal weight." (AR 21.) Specifically, the ALJ states:

> The undersigned affords this opinion minimal weight. Dr. Palmar saw the claimant only once and his opinion is a snapshot of one day of subjective complaints and an examination. Dr. Palmar had to rely on what the claimant told him and there is no evidence that she advised him that she was attending college.

(AR 21.)

In short, the ALJ provides two reasons for discounting the opinion of Dr. Palmer: (1) Dr. Palmer saw the Plaintiff only on one occasion, and (2) Dr. Palmer had to rely on Plaintiff's subjective complaints to form his opinion. The Court finds that the ALJ failed to provide specific and legitimate reasons for discounting Dr. Palmer's opinion.

First, as with Dr. Gioia, the ALJ's reason that Dr. Palmer's opinion is entitled to less weight because he only saw Plaintiff on one occasion is undermined by the fact that the ALJ simultaneously relies on the state consultant opinions, which never examined Plaintiff, and Dr. Coelho's opinion, which also saw Plaintiff only on one occasion. The ALJ's first reason for discounting Dr. Palmer's opinion is not specific and legitimate.

Second, the ALJ is incorrect that Dr. Palmer had to rely on Plaintiff's subjective

complaints. In fact, in his opinion, Dr. Palmer answers the question "[o]n which of your findings have you based this conclusion [regarding Plaintiff's lifting limitations]?" with the following justifications:

- Pain and/or limitations with active range of motion of left elbow, left wrist, and left hand.
- Puffiness and bony swelling of the radial side of the left wrist.
- Puffiness of the ulnar side of the left wrist.
- Muscular atrophy of the left hand and left forearm.
- Sensation diminished in the fingers of the left hand.
- Pincer and grip weakness, left hand.

(AR 593.) These are specific medical findings by Dr. Palmer that informed his opinion, not subjective reports from Plaintiff. The Court finds that the ALJ's second reason for discounting Dr. Palmer's opinion is not legitimate.

### B. The ALJ Did Err by Finding Plaintiff's Hip Pain and Bilateral Knee Pain Were Non-severe.

Plaintiff contends that the ALJ committed legal error by finding Plaintiff's hip pain and bilateral knee pain were non-severe at step two of the five-step inquiry.

At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* A "severe" impairment is "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The "ability to do basic work activities," in turn, is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting S.S.R. 96-3p).

Significantly, "the step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen*

*v. Yuckert*, 482 U.S. 137, 153-54 (1987)). Its purpose "is to do no more than allow the [Commissioner] to deny benefits summarily to those applicants with impairments of a minimal nature which could never prevent a person from working." *Titles II & XVI: Med. Impairments That Are Not Severe*, SSR 85-28 (S.S.A. 1985) (internal quotation omitted). Therefore, "an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Webb*, 433 F.3d at 687 (quoting S.S.R. 85-28).

This Court has previously found that "the holding of *Webb*, as opposed to its statement of the standard, requires the Court to reverse if objective evidence suggests that Plaintiff's impairments are more than de minimis." *Young v. Colvin*, No. CV-16-02264-PHX-DGC, 2017 WL 677167, at *4 (D. Ariz. Feb. 21, 2017).

In this instance, the medical record clearly shows that Plaintiff's hip and bilateral knee pain satisfy the de minimus screening. (*See, e.g.*, AR 666-68 (December 13, 2013 treatment notes from Dr. McWhorter showing that Plaintiff experienced hip pain that was aggrevated by laying down, increased by sitting, and that resulted in decreased mobility. Dr. McWhorter also administered joint injections in an attempt to treat the pain.); AR 670-74 (presenting to Dr. McWhorter in November 2013 with bilateral knee pain, at which point he diagnosed her with trochanteric bursitis, anterior knee pain, and sciatica).)

On remand, the ALJ should review the record as a whole, and account for Plaintiff's hip and knee conditions beyond step two.

### C.    The ALJ Did Not Err in Evaluating Third Party Credibility.

"In order to disregard the testimony of a lay witness, the ALJ is required to provide specific reasons that are germane to each witness." *Fleming v. Comm'r of Soc. Sec. Admin.*, 500 Fed. App'x. 577, 579 (9th Cir. 2012); *Klain v. Comm'r of Soc. Sec. Admin.*, No. CV-16-04390-PHX-DGC, 2017 WL 6276370, at *7 (D. Ariz. Dec. 11, 2017). Plaintiff argues that the ALJ erroneously discounted the testimony of Plaintiff's husband, Carson E. Carroll, Jr. (Doc. 23 at 16.)

The ALJ provided three reasons for rejecting Mr. Carroll's testimony: (1) his opinion is based on casual observation rather than objective medical evidence; (2) his observations, as a lay person, do not outweigh the accumulated medical evidence regarding the extent to which Plaintiff's limitations can reasonably be considered severe, and (3) his opinion "is unpersuasive because he is the [Plaintiff's] husband and has a pecuniary interest in the outcome of this case." (AR 18.)

The Court finds that at least the ALJ's second reason is germane. The Ninth Circuit has held that an "[i]nconsistency with medical evidence is [a germane] reason to discount lay testimony. *Bayliss*, 427 F.3d at 1218. Here, Mr. Carroll's report conflicts with the opinions of both Dr. Coelho and the state consultants. (*Compare* AR 75-77, 92-94, 585-86 *with* AR 242.) Accordingly, the ALJ did not err in evaluating Mr. Carroll's testimony.

## V.   Remand.

Where an ALJ fails to provide adequate reasons for rejecting the opinion of a physician, the Court must credit that opinion as true. *Lester*, 81 F.3d at 834. An action should be remanded for an immediate award of benefits when the following three factors are satisfied: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (citing *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1202 (9th Cir. 2008), *Lingenfelter v. Astrue*, 504 F.3d 1028, 1041 (9th Cir. 2007), *Orn*, 495 F.3d at 640, *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004), and *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). There is "flexibility" which allows "courts to remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1020.

The Court finds that the second factor is clearly satisfied. As discussed above the ALJ has failed to provide legally sufficient reasons for discounting the medical opinions of Dr. Retay and Dr. Palmer. Factors one and three are closer questions. Further development of the record would help to establish whether Plaintiff's hip and bilateral knee pain are sufficiently severe such that they make Plaintiff disabled. And it is not clear that crediting Dr. Retay's and Dr. Palmer's opinions as true would result in a finding of disability for Plaintiff.

Accordingly, the Court will exercise its discretion to vacate the final decision of the ALJ and remand this case for further proceedings consistent with this opinion.

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **vacated** and this case is **remanded** for further proceedings consistent with this opinion. The Clerk shall enter judgment accordingly and **terminate** this case.]

Dated this 1st day of March, 2018.

_____
Honorable John Z. Boyle
United States Magistrate Judge

- 21 -